FILED
SUPERIOR COURT
OF GUAM

2022 MAR 11 PM 4:42

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **GOVERNMENT OF GUAM BY GUAM HOUSING AND URBAN RENEWAL AUTHORITY,** A Public Body Corporate and Politic | **CIVIL CASE NO. CV0298-21** |
| **Plaintiff,** | **DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS** |
| **vs.** | |
| **ANTOINETTE S. RODRIGUEZ** | |
| **Defendant.** | |

This matter came before the Honorable Dana A. Gutierrez on December 10, 2021 for a hearing on Defendant Antoinette S. Rodriguez's ("Rodriguez") Motion to Dismiss. Present via Zoom was Attorney Joseph B. McDonald representing Plaintiff Guam Housing and Urban Renewal Authority ("GHURA"); Rodriguez; and Attorney Richard L. Johnson representing Rodriguez. Having reviewed the arguments presented by the parties and in accordance with the applicable law, the Court now issues this Decision and Order **GRANTING** Rodriguez's Motion to Dismiss.

## BACKGROUND

This action arises out of GHURA's Complaint filed on April 20, 2021 ("Complaint") asserting six (6) causes of action against Rodriguez, identified as follows: **Count 1**: False or Fraudulent Claims (5 GCA § 37102(a)(1) (2011-12 HAP Contract)); **Count 2**: False or Fraudulent

Claims (5 GCA § 37102(a)(2) (2011-12 HAP Contract)); **Count 3**: False or Fraudulent Claims (5 GCA § 37102(a)(1) (2013 HAP Contract)); **Count 4**: False or Fraudulent Claims (5 GCA § 37102(a)(2) (2013 HAP Contract)); **Count 5**: Breach of Contract (2013 HAP Contract); **Count 6**: Unjust Enrichment (2013 HAP Contract). Compl., at 18-25.

Because the causes of action are primarily derived from Guam's False Claims and Whistleblower Act ("FCWA"), codified at 5 GCA §§ 37101, *et seq.*, GHURA additionally filed a Motion for *In Camera* Review of Application to Seal Complaint pursuant to 5 GCA § 37202(b). On May 24, 2021, the Court held an *ex parte* hearing to review the Complaint *in camera* based on the Motion for *In Camera* Review. Upon review of the Complaint, the Court granted GHURA's Application to Seal Complaint and ordered that the case be sealed for at least sixty (60) days to allow GHURA to serve the Complaint upon the Government and permit the Government to investigate the matter to determine whether to intervene in the case, pursuant to 5 GCA § 37202(b). Order Sealing Case (May 24, 2021).

On July 26, 2021, the Government of Guam, by and through the Office of the Attorney General, filed a Notification of Declination to Intervene; Request for Service of Pleadings ("Notification"). The Notification informs the Court that the Government of Guam declines to intervene as a plaintiff in the above-captioned case.

On July 27, 2021, the Court held a Further Proceedings hearing and granted GHURA's oral motion to unseal the Complaint in light of the Government's Notification and allow the Complaint and Summons to be served upon Rodriguez in accordance with 5 GCA § 37202(c)(2). Min. Entry (July 27, 2021); Order Unsealing Case (July 27, 2021).

On July 30, 2021, Rodriguez was personally served with the Summons and Complaint.

Decl. of Service (Aug. 4, 2021). In response, Rodriguez filed the present Motion to Dismiss on August 18, 2021. GHURA filed a Response to Motion to Dismiss ("Opposition") on September 15, 2021. Rodriguez filed a Reply brief on September 28, 2021. The Court heard the oral argument of the parties on December 10, 2021 and took the matter under advisement.

## DISCUSSION

### I.  The FCWA Claims.

Rodriguez moves this Court to dismiss Counts 1 through 4 of the causes of action listed in the Complaint ("the FCWA claims") for the failure to to state a claim upon which relief may be granted. Motion, at 1-2. The FCWA claims are based on Rodriguez's Housing Assistance Payment ("HAP") contracts with GHURA. *Id.* GHURA, as a Public Housing Authority ("PHA"), administers the U.S. Department of Housing and Urban Development's ("HUD") Housing Choice Voucher Program ("HCV program," or "Section 8") on Guam. *Id.* at 6. By entering into HAP contracts with GHURA, the HCV program allows owners of rental units to collect federal housing assistance payments from GHURA. *See id.* at 13.

GHURA alleges that from January 2011 through November 2012, and on May 13, 2013, Rodriguez entered into one or more HAP contracts with GHURA ("2011-12 HAP contracts" and "2013 HAP contract," respectively, or "HAP contracts," collectively) as an owner of rental properties *Id.*, at 10-13. Prior to the expiration of the 2013 HAP contract, Rodriguez executed five (5) Re-certification Amendments to the 2013 HAP contract, extending the effective date of the 2013 HAP contract through its termination date on June 30, 2018. Compl., at 15-17. The Re-certification Amendments contained a "preservation clause" stating that "[a]ll other covenants, terms, and conditions in the HAP Contract and the current Lease shall remain the same." *Id.*

3

Based on the HAP contracts and the five (5) Re-Certification Amendments, GHRUA alleges that Rodriguez collected federal housing assistance payments from GHURA from January 2011 to November 2012 and from May 2013 through June 30, 2018. *Id.*, at 10-17.

The HAP contracts state that:

> A **covered individual** may not have any direct or indirect interest in the HAP contract or in any benefits or payments under the contract (**including the interest of an immediate family member of such covered individual**) while such person is a covered individual or during one year thereafter . . . The owner certifies and is responsible for assuring that no person or entity has or will have a prohibited interest, at execution of the HAP contract, or at any time during the HAP contract term. If prohibited interest occurs, the owner shall promptly and fully disclose such interest to the [Public Housing Authority] and [the United States Department of Housing and Urban Development].

*Id.*, at 11, Exhibit 1, Part B (hereinafter referred to as the "conflict of interest provision") (emphasis added).

The HAP contracts define a "covered individual" as "any public official, member of a governing body, or State or local legislator, who exercises functions or responsibilities with respect to the program[.]" *Id.* at 11. Rodriguez's brother, Dennis Rodriguez, served as a senator in Guam's Legislature from January 2011 through January 7, 2019. *Id.* at 10. By virtue of Rodriguez's status as an "immediate family member" of a Guam legislator while receiving federal housing assistance payments pursuant to her HAP contracts, GHURA alleges that Rodriguez had a prohibited interest in the HAP contracts constituting a violation of the conflict of interest provision in the HAP contracts. *Id.* at 11-13.

GHURA asserts that Rodriguez violated the conflict of interest provision in the HAP contracts by failing to disclose her prohibited interest or seek a waiver of her prohibited interest from HUD. *Id.* Thus, GHURA argues that by signing the HAP contracts which state that the

4

signatory certifies that he or she does not and will not have a prohibited interest at any time during the HAP contract term, Rodriguez: 1) knowingly presented, or caused to be presented, to an officer or employee of the government of Guam, false or fraudulent claims for payment or approval, in violation of 5 GCA § 37102(a)(1) of the FCWA; and 2) knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, in violation of 5 GCA § 37102(a)(2) of the FCWA. *Id.*, at 18-22.

Rodriguez's Motion to Dismiss is primarily based on the argument that Guam's FCWA cannot be retroactively applied and may only apply to claims arising after its effective date of August 24, 2018. Motion, at 4-6. Rodriguez points out that the fraudulent conduct alleged by GHURA in support of the FCWA claims occurred from on or about January of 2011 through June of 2018. Compl., at 10-17; Motion, at 4-6. Rodriguez asserts that because the FCWA cannot be applied retroactively and because GHURA has not supported any of its FCWA claims by acts that occurred after its effective date of August 24, 2018, the FCWA claims must be dismissed for failure to state a claim upon which relief can be granted. Motion, at 4-6. In opposition, GHURA asserts that the FCWA must be construed to have retroactive effect by "necessary implication." Opp., at 5.

### A. A Statute Is Retroactive Only Where It Is Expressly So Declared Or When Retroactivity Is Necessary to Accomplish the Purpose for Which the Statute Was Enacted.

Guam has an express statute that addresses the effect of the absence of a retroactivity clause within a statute. Specifically, 1 GCA § 702 provides that: "No part of this Code is retroactive, unless expressly so declared." Guam's FCWA does not contain a retroactivity clause, nor does the Public Law which enacted Guam's FCWA. *See* 5 GCA §§ 37101; P.L. 34-116:XII:20.

Despite 1 GCA § 702's requirement of a retroactivity clause, the Guam Supreme Court has

carved out an exception where statutes may be applied retroactively even where the statute does not expressly provide. *See In Re Request of 24th Guam Legislature for Declaratory Judgment*, 1997 Guam 15 ¶ 15 ("*In Re Request of 24th Legislature*").

In *In Re Request of 24th Guam Legislature*, the Guam Supreme Court held that as a rule, a statute is presumed to have only prospective effect unless it is made expressly retroactive, or must be construed to have retroactive effect by "necessary implication." *Compare In Re Request of 24th Guam Legislature*, 1997 Guam 15, *with People v. Camacho*, 2013 Guam 3 (finding that the statute without a retroactivity clause should not be construed to have retroactive effect because retroactivity was not necessary to carry out the statute's purpose). The Court found that "in the absence of a retroactivity clause the legislative intent is looked to for guidance as to whether retrospective impact is otherwise specifically directed or is necessary to accomplish the purposes for which the statute was enacted." *In re Request of 24th Guam Legislature*, 1997 Guam 15 ¶ 15.

In *In Re Request of 24th Guam Legislature,* the Guam Legislature passed Resolution 97-77 seeking a declaratory judgment from the Guam Supreme Court on issues related to its interpretation of Guam law regarding the initiative to reduce the size of the Guam Legislature. *Id.* at ¶ 3-4. Upon receiving notice that the Guam Supreme Court would address the questions asked by the Guam Legislature in Resolution 97-77, other Guam senators passed Resolution 97-155 motioning the Guam Supreme Court to dismiss the Request for Declaratory Judgment contained in Resolution 97-77. *Id.* at ¶ 9-10.

Four days prior to the oral argument regarding the Motion to Dismiss the Request for Declaratory Judgment, the Guam Legislature passed Substitute Bill 220 which, although deemed an appropriations bill, included an amendment to 7 GCA § 4104. *Id.* at ¶ 10. The amendment to 7

GCA § 4104 specifically caused the Guam Supreme Court to lose jurisdiction over Requests for Declaratory Judgment where the Legislature later adopts a resolution requesting the dismissal, as was the case in *In Re Request of 24th Guam Legislature. Id.*

Two days later (and two days prior to the oral argument date set before the Guam Supreme Court), Substitute Bill 220 was signed into law through Public Law 24-61. *Id.* at ¶ 11. Neither Substitute Bill 220 nor Public Law 24-61 contained an express retroactivity clause. *Id.* at ¶ 10-11. Thus, the issue before the Guam Supreme Court was "whether, despite the absence of a retroactivity provision, the Guam Legislature intended that Public Law 24-61 and Resolution 97-155 operate in conjunction to compel the dismissal" of the Request for Declaratory Judgment brought before the Court through Resolution 97-77. *Id.* at ¶ 13.

The Guam Supreme Court reasoned that the expedited manner in which Resolution 97-155, Substitute Bill 220, and Public Law 24-61 were passed "in anticipation" of the nearing oral argument on the Request for Declaratory Judgment demonstrated that "the primary purpose of Public Law 24-61 was to prevent [the Guam Supreme Court] from determining the merits of the pending Request for Declaratory Judgment." *Id.* at ¶ 16-19. The Court additionally considered the Legislature's statement within Resolution 97-155 which said that if the issues raised in the Request for Declaratory Judgment were "left in the hands of the Supreme Court, [it] might result in a determination which had an 'unintended and undesirable impact' for the 24th Guam Legislature." *Id.* at ¶ 17.

In light of the context in which Public Law 24-61 was passed along with the express language of the Legislature within Resolution 97-155, the Court held that "despite the omission of the retroactivity clause, Public Law 24-6's [sic] amending of 7 GCA § 4104 was specifically

intended to apply to the Supreme Court's jurisdiction [over the Request for Declaratory Judgment brought before it by Resolution 97-77]." *Id.* at ¶ 22.

By contrast to *In Re Request of 24th Guam Legislature*, in *People v. Camacho*, the Guam Supreme Court found that Guam's newly enacted family violence diversion program and deferred plea program, promulgated through Public Law 31-109, was intended by the Legislature to apply prospectively. *People v. Camacho*, 2013 Guam 3 ¶ 12-14.

In reaching this conclusion, the Court noted that the Legislature could have made Public Law 31-109 effective immediately or applicable to all pending cases, but in this instance, it did not. *Id.* at ¶ 13. Instead Public Law 31-109 specifically identified its effective date as 180 days after its enactment. *Id.* Additionally, the Court found that nothing in the legislative history indicated that the retrospective application of Public Law 31-109 is necessary to accomplish the purposes for which the statute was enacted. *Id.* at ¶ 14.

### B. Guam's FCWA Is Not Retroactive.

As previously stated, the FCWA does not contain a retroactivity clause, nor does the Public Law which enacted Guam's FCWA, as required by 1 GCA § 701. *See* 5 GCA §§ 37101; P.L. 34-116:XII:20. Therefore, the Court must evaluate whether the FCWA "must be construed to have retroactive effect by "necessary implication." *In re Request of 24th Guam Legislature*, 1997 Guam 15 ¶ 15.

GHURA argues that the FCWA must be construed to have retroactive application because the legislative history of the FCWA demonstrates that the Legislature intended that the FCWA be applied retroactively. Opp., at 6-10. In response, Rodriguez argues that the "legislative history" cited by GHURA is "insufficient to overcome the presumption against retroactivity" and that

retroactive application is not required by "necessary implication" simply where retroactivity might further the purpose of a statute. Reply, at 2-5.

GHURA has not directed this Court to any jurisdiction which had applied its FCWA equivalent retroactively where the statute did not expressly so provide. By contrast, at least one jurisdiction has rejected the retroactive application of its FCWA where the statute did not contain a retroactivity provision. *State ex rel. Hayling v. Correctional Medical Services, Inc.*, 28 A.3d 1246, 1250-51 (N.J. Super. Ct. App. Div. 2011). In *State ex rel. Hayling v. Correctional Medical Services, Inc.*, the New Jersey Appellate Division affirmed the lower court's finding that New Jersey's False Claims Act ("NJFCA") is not retroactively applicable to conduct occurring prior to its effective date. *Id.* at 1250-51.

Outside the context of specifically "false claims" or "whistleblower" statutes, well developed case law has established some of the considerations for the Court to analyze when determining whether a statute has retroactive application where a retroactive provision is not expressly included in the law. *See In Re Request of 24th Guam Legislature*, 1997 Guam 15 ¶ 15; *Hayling*, 28 A.3d at 1250-53; *McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493-94 (1931); *Landgraf v. USI Film Products*, 511 U.S. 244, 286 (1994); *U.S. ex rel. Maharaj v. Estate of Zimmerman*, 427 F.Supp.3d 625, 645-47 (D. Md. 2019).

These considerations include: 1) whether the legislature followed the model of other jurisdictions which contained retroactivity clauses in that state's equivalent for the statute; 2) the legislative history of the statute; and 3) whether prospective application would render the statute ineffective. *See In Re Request of 24th Guam Legislature*, 1997 Guam 15 ¶ 15; *Hayling*, 28 A.3d at 1250-53; *McCaughn*, 283 U.S. at 493-94; *Landgraf*, 511 U.S. at 286. In addition, when considering

whether a statute is retroactive, the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place. *Maharaj*, 427 F.Supp.3d at 645-47.

**1.     The Legislature Declined to Follow the Model of Other States Which Specifically Included a Retroactivity Clause.**

Other states with a statute equivalent or comparable to the FCWA have included an express provision specifying that their false claims act would have retroactive application. *Hayling*, 28 A.3d at 1251 (citing New York False Claims Act, 2007 N.Y. Sess. Laws c. 58, § 93 ("section thirty-nine of this act [Civil actions for false claims] shall apply to claims filed or presented prior to, on or after April 1, 2007 [the Act's effective date]."); Cal. Gov. Code § 12654(b) ("A civil action under Section 12652 may be brought for activity prior to January 1, 1988, if the limitations period set in subdivision (a) has not lapsed.")).

In *Hayling*, the Court reasoned that the New Jersey Legislature's decision not to follow the model of some other states which expressly specified that their false claims act would have a retroactive application weighed against retroactive application of the NJFCA. *Id*. In this case, Guam's Legislature similarly did not follow the model of other states which included an express retroactivity provision, weighing against a finding of retroactive application of the FCWA.

**2.     The Legislative Intent Is Not Sufficiently Clear to Support a Finding that the FCWA Must Apply Retroactively.**

The Court notes that Public Law 34-116:XII:20 which enacted Guam's FCWA does not include any provision regarding legislative intent or findings of the Legislature. *See* P.L. 34-116:XII:20. In fact, the FCWA was passed as a "Miscellaneous Provision" within Public Law 34-116 which served primarily to pass Guam's budget and appropriations bill for the 2019 Fiscal Year. *See* P.L. 34-116 ("This is to certify that Substitute Bill No. 323-34 (COR), 'An Act Making

Appropriations for the Operations of the Executive, Legislative, and Judicial Branches of the Government of Guam for Fiscal Year Ending September 30, 2019, Making Other Appropriations, and Establishing Miscellaneous and Administrative Provisions,' was on the 11th day of August 2018, duly and regularly passed.").

Notwithstanding the lack of a legislative intent provision within Public Law 34-116:XII:20, GHURA argues that the legislative intent for retroactivity is supported by comments made in support of the FCWA at the public hearing regarding passage of the FCWA bill, Bill No. 286-34. Opp., at 4-10. Specifically, GHURA cites to comments made by Senator Michael F.Q. San Nicholas, who introduced Bill 286-34, Chairman Joe S. San Agustin,[1] and three speakers who testified in support of the bill's passage: Braddock Huesman, Charles Stake and Ryan Calvo. Opp., at 6-10.

When reviewing the legislative history of Guam's FCWA, the Court may consider factors such as the context in which the statute was adopted as law, both through the public law and its underlying bill, written statements included in the final bill as passed, and any legislative intent included in the public law. *See In Re Request of 24th Guam Legislature*, 1997 Guam 15, ¶ 16-22 (where the Court considered these factors when determining the legislative intent of the statute).

On the other hand, statements made by committee members and other non-legislator witnesses to legislative committees when arguing for or against a bill should not be given weight when interpreting the legislative intent of a statute. *See, e.g., McCaughn*, 283 U.S. at 493-94 (where the Court analyzed the administrative and legislative history of the word "candy" to discern whether the excise tax applied to "chocolate" and finding that the statements made to Congress on

---

[1] Senator Joe S. San Agustin served as the Chairman of the Committee on Education, Finance, and Taxation which conducted the public hearing on Bill 286-34. *See* Compl., Exhibit A.

the senate floor were insignificant and "without weight in the interpretation of a statute."); *State v. Turner*, 254 A.3d 204, 209 (Vt. 2021) ("[C]omments made by committee members and witnesses at committee hearings considering the bill . . . are of little weight in determining legislative intent."); *State v. Zook*, 476 P.3d 508, 514 (Or. 2020) ("The testimony of nonlegislator witnesses is a problematic indication of legislative intent in ordinary circumstances."); *State v. Lake*, 466 P.3d 1152, 1156 (Wash. Ct. App. 2020) ("The testimony in favor of a bill is not necessarily determinative of the legislature's intent."); *State v. $223,405.86*, 203 So.3d 816, 831 (Ala. 2016) ("The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the Legislature or individual members in voting for its passage[.]"); *Stanley v. Sullivan*, 336 P.3d 870, 1021-22 (Kan. 2014) ("The courts are charged with applying laws as the legislature enacted them, not as witnesses advocated for them or as legislative committee chairs understood them.").

Additionally, although statements made by the legislators responsible for drafting the bill may be considered, "isolated statements" of legislators are typically "not impressive legislative history." *Garcia v. U.S.*, 469 U.S. 70, 78 (1984); *State v. $223,405.86*, 203 So.3d at 831 ("The motives or reasons of an individual legislator are not relevant to the intent of the full legislature in passing the bill."). Further, for committee reports to be persuasive on the issue of retroactivity where the statute does not expressly provide for retroactive application, there must be "clear and unavoidable implication of legislative intent to apply" the statute retroactively. *Compare Myers v. Philip Morris Companies, Inc.*, 50 P.3d 751, 761-62 (Cal. 2002) (declining to "discern legislative intent from comments by a bill's author because they reflect only the views of a single legislator instead of those of the Legislature as a whole"), *with Western Security Bank v. Superior Court*, 933

P2d 507, 512-17 (Cal. 1997) (where the court found "clear and unavoidable implication" of the legislature's intent to apply a statute retroactively where the legislature expressly wrote that the purpose in enacting the statute was to "abrogate" a trial court's previous decision incorrectly interpreting the statute).

In the context of "false claims" statutes, the *Hayling* Court recognized that the NJFCA tracks the federal False Claims Act, codified at 31 U.S.C.S. §§ 3729, *et seq. Hayling*, 28 A.3d at 1252.[2] Similar to Guam, New Jersey law imposes a presumption of prospective application, except in cases where the Legislature has expressed the contrary intent. *Id.* at 1250-51.

When considering the retroactivity of the NJFCA, the *Hayling* Court acknowledged the statements made by the NJFCA's sponsor at the final committee hearings regarding the NJFCA's enactment and found that the statements did not appear in a discussion of retroactivity, and therefore were not indicative of legislative intent on the issue. *Hayling*, 28 A.3d at 1252 (where the sponsor stated that the NJFCA would allow "private individuals with the knowledge of past or present fraud to the federal, and in this case, state government to sue on behalf of the government to recover the losses to the public for fraudulently obtained public monies.").

The *Hayling* Court reasoned that although the plaintiff singled out the sponsor's use of the word "past" in order to demonstrate legislative intent for retroactivity, the sponsor's words in fact do not "appear in a discussion of retroactivity–and, indeed, retroactivity is never discussed directly by the [sponsor]." *Id.*

In this case, the statements of Senator San Nicholas singled out by GHURA are strikingly

---

[2] The Court notes that Guam's FCWA similarly tracks the federal False Claims Act ("FFCA"). The FFCA's section titled Liability for Certain Acts (31 U.S.C.S. § 3729(a)) as well as the FFCA's section titled Actions by Private Persons (31 U.S.C.S. § 3730(b)) are nearly identical to Guam's FCWA sections titled Liability for Certain Acts (5 GCA § 37102(a)) and Actions by Private Persons (5 GCA § 37202(a)).

similar to the statements singled out in *Hayling*. Specifically, GHURA cites to the following statement from Senator San Nicholas: "[W]e're hoping is that with the passage of bill 286 we can open the door further . . . [for] whistleblowers who are willing to step up and acknowledge that these things are happening and in return not only be part of the adjudication process but also share in the recovery of monies that were lost to the People of Guam." Opp., at 9.

GHURA appears to emphasize the past tense use of the word "lost" in Senator San Nicholas' statement. *Id.* However, like in *Hayling*, this statement was not made within a discussion of retroactivity and in fact, a review of the committee report demonstrates that retroactivity is never discussed by Senator San Nicholas. Opp., at 9 and Exhibit A (Bill No. 286-34 Committee Report).

The comments made by the witnesses and Chairman San Agustin in support of the FCWA cited to by GHURA do provide some insight into Guam's financial situation at the time the FCWA was enacted. *See* Opp., at 6 and Exhibit A (Bill No. 286-34 Committee Report). In sum, their comments indicate that Guam was experiencing a financial crisis and that the passage of the FCWA would assist Guam's government in preventing fraud and collecting money owed to it when the money is kept from the government by fraudulent acts. *Id.*

However, while recognizing that these statements provide context for Guam's financial situation at the time the law was passed, the Court must give these speakers' testimonies little weight in discerning the Legislature's intent because the comments were made by committee members and other non-legislator witnesses when arguing in support of passing Bill 286-34. *See, e.g., Lake,* 466 P.3d at 1156; *Turner,* 254 A.3d at 209. Further, GHURA does not cite to any statements from these speakers specifically addressing the issue of retroactivity. Rather, the statements indicate the need for a law such as the FCWA in order to protect whistleblowers from

14

retaliation and incentivize individuals to come forward to report and expose false claims. Opp., at 8-9. Accordingly, the Court does not find the statements cited to by GHURA to be persuasive on the issue of the Legislature's intent regarding whether the FCWA was intended to apply retroactively.

Similar to the statements cited by Bill 286-34's other supporters, none of Senator San Nicholas' statements clearly demonstrate an "unavoidable implication of legislative intent" to apply the statute retroactively. *See* Opp., at 7-9; *Myers*, 50 P.3d at 761-62. Rather, Senator San Nicholas' statements simply indicate that he recognized that the enactment of the federal False Claims Act has enabled the federal government to recover money stolen from it through fraud, and therefore, it is Senator San Nicholas' hope that such a statute will aid Guam in doing the same. *See* Opp., at 7-9 and Exhibit A (Bill No. 286-34 Committee Report).

Without any mention as to whether Senator San Nicholas anticipated the statute to apply retroactively, this Court is not persuaded to find his statements as a "clear and unavoidable implication" that the FCWA must be applied retroactively. *Myers*, 50 P.3d at 761-62; *McClung v. Employment Devel. Dept.*, 99 P.3d 1015, 1021 (Cal. 2004) (A statute "will not operate retroactively unless such retroactivity be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.").

### 3. Prospective Application Would Not Render the FCWA Ineffective.

The presumption in favor of prospective application where a statute does not expressly provide otherwise is only overcome by "necessary implication" of retroactivity when the statute "*must* be understood to operate retroactively because a contrary reading would render it ineffective." *Landgraf*, 511 U.S. at 286 (holding that a newly enacted provision within Title VII of

15

the Civil Rights Act which conferred a new right to monetary relief for victims of a hostile work environment may not be applied retroactively). In other words, although it will "frequently be true . . . that retroactive application of a new statute would vindicate its purpose more fully," that reality "is not sufficient to rebut the presumption against retroactivity." *Id.*

In *Hayling*, the Court found that a retroactive interpretation of the NJFCA was not "necessary to make the statute workable or to give it the most sensible interpretation." *Hayling*, 28 A.3d at 1253. The *Hayling* Court reasoned:

> The [NJFCA] establishes a *qui tam* action as a means of policing fraud on state government, thereby recognizing a cause of action that had previously been unavailable under the laws of New Jersey. **Construing the [NJFCA] as prospectively applicable in no way destroys its functionality**, as was the case in *Rothman v. Rothman*, 65 N.J. 219, 223–24, 320 A.2d 496 (1974) (applying the State's newly enacted equitable distribution statute retroactively so as to avoid the "difficult if not impossible task," of determining the date of acquisition of each marital asset and to avoid the probability that the full effect of the newly-enacted statute "would not be felt for at least a generation.")
>
> Further, retroactivity is not otherwise required for the reasonable application of the [NJFCA]. **While it is possible that, if the statute were applied retroactively, the State could recover additional funds paid by it as the result of false claims, we find no evidence that the Legislature envisioned such additional potential recoveries when enacting the NJFCA.** The fact that reach of an ameliorative statute could be broader does not constitute a sufficient reason, without support in the legislative history, for declaring a statute to be retroactive.

*Id.* (internal citations omitted) (emphasis added).

As an example of this doctrine, in *Nixon v. Dist. of Columbia Dept. of Employment Services*, the D.C. Court of Appeals considered the retroactivity of statutory provisions that deemed workers' compensation claims as "accepted" if a decision on the claim is not rendered within 30 days of the filing of the claim. *Nixon v. Dist. of Columbia Dept. of Employment Services*, 954 A.2d 1016, 1021 (D.C. Ct. App. 2008). The *Nixon* Court reasoned that the statutory provisions must not be applied

retroactively to claims pending prior to the statute's enactment because they "are plainly not the sort of provisions that must be understood to operate retroactively because a contrary reading would render them ineffective[.]" *Id.*, at 1024 (citing *Landgraf*, 511 U.S. at 286). The *Nixon* Court continued: "[E]ven if they afford relief only with respect to claims filed after their effective date, they alleviate in part the problem of delayed actions on claims." *Id.*

Following the reasoning explained in *Hayling*, this Court finds that the FCWA is not to be applied retroactively because construing the FCWA as prospectively applicable in no way destroys its functionality or purpose, as was the case of *In Re Request of 24th Guam Legislature*. Although it is possible that if the FCWA were to be applied retroactively, the Government of Guam could recover additional funds, this Court sees no evidence that the Legislature "envisioned such potential recoveries" when enacting the FCWA. *See Hayling*, 28 A.3d at 1253. Further, such possibility "is not sufficient to rebut the presumption against retroactivity." *See Landgraf*, 511 U.S. at 286. A finding that the FWCA applies only to conduct occurring after its enactment date does not negate its function to "alleviate" many of the problems discussed when passing Bill 286-34. *See Nixon*, 954 A.2d at 1024. Accordingly, this Court finds that prospective application of the FCWA would not render the statute ineffective.

### 4. The Legal Effect of Conduct Should Ordinarily Be Assessed Under the Law That Existed When the Conduct Took Place.

In reviewing the application of the Federal False Claims Act, or FFCA, the language of which is tracked by Guam's FCWA, the Court is further persuaded that prospective application is required. Since its enactment, some provisions of the FFCA have undergone several amendments. *See Maharaj*, 427 F.Supp.3d at 645-47. When interpreting whether these amendments were to be

applied retroactively, the federal courts have consistently held them to have only prospective effect. *Id.* (stating that "the [FFCA] does not have retroactive force and therefore may not be applied to cases arising before the effective date of the amendments.").

Specifically, in *Maharaj*, the District Court of Maryland considered the retroactive applicability of the FFCA's 2010 amendment to its public disclosure bar. *Id.* Prior to 2010, the FFCA provided that no court has jurisdiction over an action under the FFCA where the information was obtained through public disclosure of the allegations, unless the person bringing the action was the original source of the information. *Id.* at 645-46.

In 2010, Congress amended the public disclosure bar to change the modes by which the public disclosure could be made and also to define "original source." *Id.* These amendments "significantly changed the scope of the public-disclosure bar." *Id.* The Court held that the 2010 amendment must not be applied retroactively because "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place[.]" *Id.* at 647. In *Maharaj*, the relator alleged fraud spanning from 2001 to 2015. Therefore, the Court held that it would apply the pre-2010 version of the public disclosure bar to any alleged conduct occurring before March 23, 2010 (the enactment date of the amendment), and would apply the post-2010 version to the conduct alleged to have occurred after that date. *Id.* at 648.

Although not interpreting the retroactive applicability of the FFCA in its entirety, the holding in *Maharaj* further supports this Court's finding that the FCWA must not have retroactive application, since the FCWA contains similar statutory language and construction to the FFCA.

GHURA has not produced any authority demonstrating that a false claims or whistleblower protection statute that does not contain an express retroactivity provision must be applied

retroactively. In the absence of such authority, as well as in consideration of the legislative history of the FCWA and the case law analyzed above, this Court finds there is insufficient support within the legislative history of the FCWA to conclude that the FCWA must be construed to have retroactive effect by "necessary implication," nor to conclude that the Legislature intended for the FCWA to apply retroactively to conduct occurring prior to its enactment date of August 24, 2018. *See* P.L. 34-116; *In Re Request of 24th Guam Legislature*, 1997 Guam 15 ¶ 15.

### C. Because the FCWA Is Not Retroactive, GHURA's FCWA Claims Against Rodriguez Must Be Dismissed.

Rodriguez moves to dismiss GHURA's FCWA claims against Rodriguez pursuant to Rule 12(b)(6) of the Guam Rules of Civil Procedure. Motion, at 2. Rule 12(b)(6) of the GRCP requires dismissal of a complaint if it fails to state a claim upon which relief may be granted. *See First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9. Dismissal pursuant to Rule 12(b)(6) of the GRCP "is not proper unless 'it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* When reviewing a Rule 12(b)(6) motion, trial courts must construe the complaint in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor. *Id.*

Here, even assuming that all the allegations contained in GHURA's Complaint are true, GHURA's FCWA claims against Rodriguez rely upon the alleged conduct of Rodriguez occurring from on or about January 2011 through as late as June 2018. Compl., 11-24. This means that, even assuming that all the allegations contained in the Complaint are true, all Rodriguez's alleged conduct in violation of the FCWA occurred prior to the FCWA's enactment date of August 24, 2018.

Because the FCWA does not apply retroactively to conduct occurring prior to its enactment

date of August 24, 2018, GHURA's FCWA claims against Rodriguez must be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the GRCP.

Having concluded that the FCWA operates prospectively, this Court need not consider the import of the protections against *ex post facto* laws or the issue of whether GHURA is a proper plaintiff to bring a claim under the FCWA. *See People v. Camacho*, 2013 Guam 3 ¶ 15 (finding that because the Court held the statute to apply prospectively, the Court need not address the remaining arguments raised by the litigants).

## II. The Breach of Contract and Unjust Enrichment Claims Are In Part Barred by the Statute of Limitations.

Rodriguez argues that Count 5 of the Complaint alleging breach of contract and Count 6 of the Complaint alleging unjust enrichment are at least in part barred by the statute of limitations for breach of contract and unjust enrichment. Motion, at 8. In response, GHURA "concedes that a portion of some of its claims may be subject to a time bar[.]" Opp., at 13.

The statute of limitations for a breach of contract claim is four years after the cause shall have accrued pursuant to 7 GCA § 11303. *See Lujan v. J.L.H. Trust*, 2016 Guam 24 ¶ 55. The statute of limitations for unjust enrichment is three years after the cause shall have accrued, provided that the statute of limitations begins to run "when the plaintiff suspects or should suspect that his injury was caused by wrongdoing or that someone has done something wrong to him." *See* 7 GCA § 11305; *Taitano v. Calvo Finance Corp.*, 2008 Guam 12 ¶ 45.

Here, GHURA alleges that Rodriguez's conduct from on or about May 13, 2013 through as late as June 2018 gives rise to a breach of contract claim and a claim of unjust enrichment by failing to disclose her prohibited interest or seek a waiver of her prohibited interest from HUD, as required

by the terms of the HAP contracts, and by receiving a benefit from GHURA to which she was not entitled pursuant to the HAP contracts. Compl., at 22-25.

However, the alleged "prohibited interest" of Rodriguez is based on her status as an "immediate family member" of a Guam legislator. *Id.* GHURA admits that in January 2011, Rodriguez's brother, Dennis Rodriguez "was installed as a senator" in Guam's legislature where he continued to serve as a senator until 2019. Compl., at 17. Dennis Rodriguez's status as a senator and Rodriguez's status as the sister of Dennis Rodriguez were information available to the public as early as January 2011 when the senator was sworn. GHURA does not allege that this information should or could not have been discovered by GHURA as early as January 2011.

GHURA's Complaint was filed on April 20, 2021. Therefore, only alleged conduct occurring on or after April 20, 2017 may be relied upon in support of GHURA's breach of contract claim pursuant to 7 GCA § 11303. Further, only alleged conduct occurring on or after April 20, 2018 may be relied upon in support of GHURA's unjust enrichment claim pursuant to 7 GCA § 11305.

Accordingly, the Court must dismiss the portions of the breach of contract and unjust enrichment claims arising prior to the aforementioned dates. However, because portions of the breach of contract and unjust enrichment claims appear to arise after these dates, and therefore survive dismissal, the Court will permit GHURA to amend its Complaint with regard to the actions for breach of contract and unjust enrichment which allegedly occurred within the applicable statute of limitations.

## CONCLUSION

For the reasons set forth herein, the Court hereby **GRANTS** Rodriguez's Motion to Dismiss.

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS**
*CV0298-21; Government of Guam by Guam Housing and Urban Renewal Authority v. Antoinette S. Rodriguez*

The Court further **ORDERS** that if GHURA desires to continue the actions for breach of contract and unjust enrichment, GHURA must file its Amended Complaint in accordance with this Decision and Order **within thirty (30) days** of the issuance of this Decision and Order.

**SO ORDERED** this 11th day of March, 2022.

_____
**HONORABLE DANA A. GUTIERREZ**
**Judge, Superior Court of Guam**

**SERVICE ViA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

_McDonald_

_Bürn_

Date:_____Time:_____

Joseph Bamba, Jr.
Deputy Clerk, Superior Court of Guam